# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00213-CV

**Jimmy Boyd Quick, Appellant**

**v.**

**Tammy Lou Quick Greenblum and Richard Greenblum, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. D-1-GN-10-003696, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jimmy Boyd Quick sued his former wife Tammy Lou Quick Greenblum and her current husband Richard Greenblum (together the Greenblums), for issues arising when a paternity test proved that Richard, and not Jimmy, was the biological father of a sixteen-year-old daughter born to Tammy while she was married to Jimmy. The trial court ruled against Jimmy on motions for summary judgment, disposing of all his claims. He appeals. We will affirm.

## BACKGROUND

Jimmy Boyd Quick and Tammy Lou Quick Greenblum were married in 1979. Daughters were born to them in 1982 and 1983. Thereafter, they had occasional periods of separation during their marriage. Tammy gave birth to a third daughter in 1993 (the child). Jimmy and Tammy eventually divorced in 2004 when the child was eleven years of age. The Agreed Final Decree of Divorce recited that they were parents of the child born during their marriage and

appointed Jimmy and Tammy joint managing conservators of the child. Tammy established the child's residence, and the child lived with her. The Decree did not order Jimmy to pay child support, but he was ordered to pay the child's medical, dental, and health insurance. The parties dispute whether he made any payments.

Apparently, at some point before the child's birth, Tammy had a brief, intimate relationship with Richard Greenblum, which she denied to Jimmy in December 2005. In January 2006, Jimmy and Tammy agreed to a modification order, obligating Jimmy to pay $500 per month child support for the child instead of medical support. He paid about $22,500 over time.

Sometime after the divorce, Tammy and Richard began dating. In August 2007, Tammy and the child moved in with Richard. They underwent paternity testing in July 2009. The test proved that Richard, not Jimmy, was the child's genetic father. Tammy and Richard married in October 2009.

Tammy and Richard filed a petition to establish Richard's parental rights to the child and to correct her birth certificate. The Greenblums notified Jimmy in writing that their suit would relieve him of any further child-support obligation. Jimmy demanded that Tammy reimburse him $23,000 in child support that he had paid, that Richard pay him $500 per month for the entirety of the child's life, that the Greenblums pay his attorney's fees, and requested other relief. In October 2009, the trial court issued a modification order, agreed to by Jimmy, establishing Richard as the child's genetic father, naming Richard a joint managing conservator, and denying Jimmy any monetary relief on his alleged claims against Tammy and Richard.

A year later, Jimmy filed suit against Richard and Tammy on the same general grounds previously asserted, seeking damages. He alleged that Tammy and Richard had prior

knowledge that Richard was the child's genetic parent and engaged in misconduct by failing to disclose the information to Jimmy, thereby inducing him to pay child support. He sought reimbursement of the child support and medical support he had paid, exemplary damages, attorney's fees, interest, and costs. He alleged several grounds for relief. The Greenblums denied Jimmy's claims and asserted several affirmative defenses.

Jimmy's petition urged a number of claims for recovery, mostly equitable remedies, some of which are not independent causes of action. He sought recovery for negligent misrepresentation, breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, money had and received, and disgorgement and reimbursement. Pursuant to the Greenblums' traditional and no-evidence motion for summary judgment, the trial court granted judgment on all these claims, without stating the basis for doing so.

The trial court left pending Jimmy's claims for fraud and negligence and did not rule on his new claims for constructive fraud and civil conspiracy that he added in an amended petition. Thereafter, Jimmy filed further amended pleadings, adding claims for intentional infliction of emotional distress and "paternity fraud." Pursuant to a second traditional and no-evidence motion, the trial court granted final summary judgment on all of Jimmy's remaining claims for actual and constructive fraud, negligence, intentional infliction of emotional distress, civil conspiracy, and paternity fraud. Again, the court did not state the basis for granting summary judgment.

**Standard of review**

We review a trial court's summary judgment ruling de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*,

128 S.W.3d 211, 215 (Tex. 2003). We will affirm a judgment if any ground presented to the trial court is meritorious. *Pickett v. Texas Mut. Ins. Co.*, 239 S.W.3d 826, 840 (Tex. App.—Austin 2007, no pet.). When the trial court does not state the basis for its ruling, we must affirm its judgment if any of the theories advanced can support the judgment. *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). The appellant must demonstrate that each and every ground alleged in the motion and asserted to the trial court in support of summary judgment was insufficient to support the ruling. *Pickett*, 239 S.W.3d at 840. In other words, the appellant must show that none of the grounds asserted in the motion will support summary judgment; if the appellant fails to challenge each ground for summary judgment that was advanced in the trial court, we will affirm the summary judgment on the basis of the unchallenged ground. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995); *see Berger v. Flores*, No. 03-12-00415-CV, 2015 Tex. App. LEXIS 5969, at *11-12 (Tex. App.—Austin June 12, 2015, no pet. h.) (mem. op.).

### DISCUSSION

The parties urge multiple reasons in support of and in opposition to the trial court's rulings. They discuss the merits of the claims and defenses alleged in the pleadings and a number of interesting matters of public policy and issues relating to mistaken paternity and what claims or remedies, if any, a presumed father may have once true genetic parentage is established. We need not address these, however, because we hold that Jimmy fails to address each ground on which the summary judgment can stand.

The Greenblums' first motion challenged each claim Jimmy asserted in his pleadings and alleged the legal basis, proof, and reasoning that they believed entitled them to

4

summary judgment on each claim. They further alleged that, in each instance, Jimmy failed to state a claim for which he was entitled to relief and that all claims were barred because they were unsupported by existing law. They also asserted several affirmative defenses, including res judicata, the statute of limitations, and the fact that any payments Jimmy had made were made pursuant to a valid court order that rendered him legally obligated.[1] The trial court granted judgment as to six of Jimmy's causes of action, without stating the basis for its judgment.

In attacking the trial court's first summary-judgment order, Jimmy asserts generally that the trial court erred in granting the motion and that the order should be reversed. Jimmy addresses why the trial court erred by dismissing his claims for money had and received and for disgorgement and reimbursement and gives some reasoning for his position. However, he does not challenge the fact that the trial court granted summary judgment on his claims for breach of fiduciary duty, negligent misrepresentation, breach of contract, and breach of the duty of good faith and fair dealing, all of which were dealt with and ruled upon in the trial court's first summary-

---

[1] The first motion for summary judgment also alleged, with respect to the claim of money had and received, that there was no evidence that Tammy or Richard received money that belonged to Jimmy because what he did pay passed through Tammy for the benefit of the child and Richard never received any money from Jimmy. Jimmy did not respond to the allegation at trial and does not respond on appeal.

As to his disgorgement and reimbursement claims, the Greenblums alleged that these are not independent causes of action and that Jimmy cannot recover because the record contains no evidence to support such allegations. At trial, Jimmy identified one cause of action to which this could relate—breach of fiduciary duty—but this claim was dismissed below and not challenged on appeal. He refers generally to unjust enrichment and assumpsit, but he did not plead either of these actions in the trial court.

To the extent this claim is based upon Jimmy's payment of child support, the Texas Supreme Court has held that child support is for the benefit of the child, not a debt to the other parent. *Office of the Attorney Gen. v. Scholer*, 403 S.W.3d 859, 866 (Tex. 2013).

judgment order. Thus, at the very least, he has waived his complaints as to dismissal of these claims. *Mustang Tractor & Equip. Co. v. Hartford Accident & Indem. Co.*, 263 S.W.3d 437, 439 n.1 (Tex. App.—Austin 2008, pet. denied). Further, by failing to address each ground on which the summary judgment could stand, including the affirmative defenses asserted, he fails to meet his burden on appeal, and we must affirm the summary judgment on the basis of the unchallenged grounds. *See Star-Telegram*, 915 S.W.2d at 473. The mere statement that the Greenblums failed to establish their affirmative defenses does not adequately brief these matters for our review.

The Greenblums filed a second motion requesting summary judgment on all of Jimmy's remaining claims and causes of action. They challenged each claim he had alleged, giving their legal basis, proof, and reasoning that they asserted entitled them to judgment. The Greenblums again asserted several affirmative defenses in their motion and further alleged that all Jimmy's remaining claims were barred by res judicata, and limitations and because he was financially obligated by court orders. The Greenblums' motion also asserted a number of no-evidence grounds with respect to Jimmy's claims, several of which he did not challenge below and none of which he raises on appeal. The trial court granted summary judgment on the Greenblums' second motion, again without stating the basis for granting judgment.

In attacking the final summary judgment, Jimmy does not challenge every basis for judgment urged in the Greenblums' motion. Thus, again he has failed to address every ground on which the judgment can stand. Although he challenges limitations and how he believes the discovery rule should apply to his claims for fraud,[2] constructive fraud, and intentional infliction of

---

[2] We note that the Second Court of Appeals recently observed, "We have found no case applying the discovery rule to a pre-2011 allegation of fraud by a presumed father regarding

6

emotional distress, he does not challenge the judgment denying his claims of civil conspiracy and negligence, nor does he appeal the application of res judicata or any other affirmative defense asserted as a basis for judgment.

Finally, as stated in his brief, all of Jimmy's theories of recovery relate to his being misattributed as the child's father, and he gives numerous reasons why we should adopt his theories of recovery against his former wife and the child's biological father. He focuses his argument on cases in a few other state jurisdictions that have adopted or discussed a possible action commonly referred to as "paternity fraud" or "mistaken paternity."[3] He contends that Texas should adopt their reasoning.[4] We need not reach this issue and, therefore, decline to address it.

---

conception of a child during marriage." *In re S.T.*, No. 02-15-00014-CV, 2015 Tex. App. LEXIS 5991, at *12-13 (Tex. App.—Fort Worth June 12, 2015, no pet. h.) (mem. op.).

[3] *See, e.g.*, *Fischer v. Zollino*, 35 A.3d 270, 278-79 (Conn. 2012) (rejecting trial court's ruling that equitable estoppel and public-policy concerns precluded appellant from denying his paternity and seeking reimbursement from child's biological father); *Dier v. Peters*, 815 N.W.2d 1, 14 (Iowa 2012) (reversing trial court's dismissal of appellant's claim for paternity fraud seeking recovery of money that appellant voluntarily paid to child's biological mother or spent for benefit of child).

[4] In 2011, Texas enacted a statute allowing a man to seek termination of the parent-child relationship upon proof that he is not the genetic father, that he was adjudicated the father without genetic testing, and that he failed to contest parentage because of the mistaken belief that he was the genetic father based on misrepresentations that led him to this conclusion. Tex. Fam. Code § 161.005(c)(2). The petition must be filed not later than the second anniversary of the date on which the man becomes aware of the facts indicating that he is not the genetic father. *Id*. § 161.005(e). Termination ends the man's obligation for future child support, but does not affect obligations incurred before termination. *Id*. § 161.005(i). The statute does not provide for any claim or recovery against the mother or the newly identified genetic father.

## CONCLUSION

We overrule Jimmy Boyd Quick's issues on appeal. We affirm the summary judgment.

_____

Marilyn Aboussie, Justice

Before Justices Pemberton, Bourland, and Aboussie*

Affirmed

Filed:   August 13, 2013


* Before Marilyn Aboussie, Chief Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).